IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KENNETH WAYNE RICH,

               Petitioner,                  No. CIV S- 05-0892 MCE GGH P

    vs.

MATTHEW MARTEL, Warden,[1]        <u>ORDER</u> &

              Respondent.         <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

I. <u>Introduction</u>

         Petitioner, proceeding with appointed counsel, has filed a petition pursuant to 28 U.S.C. §2254.  Petitioner's November 19, 2007, motion for summary judgment, came on for hearing on December 20, 2007, before the undersigned.  Petitioner was represented by Carolyn Wiggin, while David Eldridge appeared for respondent.[2]

---

    [1] Petitioner's counsel has provided information as to petitioner's present location, substituting Matthew Martel as respondent in place of Roseanne Campbell.

    [2] Respondent had failed to file any response to the motion and had therefore lost the privilege to speak in opposition to the motion at the hearing.  <u>See</u> Local Rule 78-230(c). Nevertheless, respondent's counsel was directed to appear at the aforementioned hearing and to show cause for respondent's omission and why summary judgment should not be entered for petitioner based on the wholesale default.  <u>See Order</u>, filed on December 18, 2007.

    At the hearing, respondent's counsel apologized and explained that respondent's prior counsel in this matter, along with a number of other counsel from the Attorney General's Office,

1       Petitioner pled guilty in Tehama County Superior Court, on October 17, 2001, to

2  five counts of various sex crime charges: count 2 - forcible rape on or about October 1993, Cal.

3  Pen. Code § 261(a)(2); count 3 - lewd and lascivious act upon a 14-year-old victim on or about

4  July, 1992, through May 8, 1993, Cal. Pen. Code § 288(c)(1) ; count 4 - lewd and lascivious act

5  upon a 15-year-old victim on or about May 9, 1993, through May 8, 1994, Cal. Pen. Code §

6  288(c)(1); count 5 - forcible genital and anal penetration by use of a foreign object for sexual

7  gratification on or about July, 1992, through May 8, 1993, Cal. Pen. Code § 289(a)(1); and count

8  8 - oral copulation on or about May 9, 1994, through May 8, 1995, with a 16-year-old victim,

9  Cal. Pen. Code § 288a(b)(1).  Second Amended Petition (SAP) at 1-2, 6-7.  Petitioner was

10 sentenced to a total aggregate term of 20 years and four months.  SAP at 8; Answer at 1.

11       Petitioner raises one ground in his second amended petition: Trial court violated

12 petitioner's Sixth and Fourteenth Amendments rights, as discussed in Apprendi v. New Jersey,

13 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004)), by imposing an

14 upper-term sentence.  SAP at 5.  The answer was filed before the decision was rendered in

15 Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856 (2007).

16 II. AEDPA

17       The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this

18 petition for habeas corpus which was filed after the AEDPA became effective.  Neelley v. Nagle,

19 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997).  The

20

---

21 had recently retired, and that the matter fell through the cracks at least in part due to the turnovers
   and a staff shortage.  The court noted also that respondent's present counsel had not even filed a
22 notice of an appearance in this matter until after the dispositive motion was filed, indicating that
   petitioner's omission was inadvertent.  When petitioner contended that counsel for respondent
23 could have sought an extension of time and argued that respondent should not be heard on the
   merits, the undersigned pointed out that the Local Rule cited above leaves it to the court's
24 discretion to hear the opposing party who fails to file a written opposition timely, but that
   counsel's failure to file written opposition is not a default, as it may deemed to be when a pro se
25 litigant fails to oppose.   At the hearing, the undersigned observed the matter must be decided
   correctly and the assistance of the Attorney General would be useful.  Therefore, the show cause
26 order will be deemed discharged.

1  AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

2  standards of review to be used by a federal habeas court in assessing a state court's adjudication

3  of a criminal defendant's claims of constitutional error.  Moore v. Calderon, 108 F.3d 261, 263

4  (9th Cir. 1997).

5          In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme

6  Court defined the operative review standard set forth in § 2254(d).  Justice O'Connor's opinion

7  for Section II of the opinion constitutes the majority opinion of the court.  There is a dichotomy

8  between "contrary to" clearly established law as enunciated by the Supreme Court, and an

9  "unreasonable application of" that law.  Id. at 1519.  "Contrary to" clearly established law applies

10 to two situations:  (1) where the state court legal conclusion is opposite that of the Supreme

11 Court on a point of law, or (2) if the state court case is materially indistinguishable from a

12 Supreme Court case, i.e., on point factually, yet the legal result is opposite.

13         "Unreasonable application" of established law, on the other hand, applies to

14 mixed questions of law and fact, that is, the application of law to fact where there are no factually

15 on point Supreme Court cases which mandate the result for the precise factual scenario at issue.

16 Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000).  It is this prong of the

17 AEDPA standard of review which directs deference to be paid to state court decisions.  While the

18 deference is not blindly automatic, "the most important point is that an *unreasonable* application

19 of federal law is different from an incorrect application of law....[A] federal habeas court may not

20 issue the writ simply because that court concludes in its independent judgment that the relevant

21 state-court decision applied clearly established federal law erroneously or incorrectly.  Rather,

22 that application must also be unreasonable."  Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

23 1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the

24 objectively unreasonable nature of the state court decision in light of controlling Supreme Court

25 authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

26 \\\\\

1    The state courts need not have cited to federal authority, or even have indicated

2 awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S.

3 Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is

4 contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An

5 unreasonable error is one in excess of even a reviewing court's perception that "clear error" has

6 occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003).  Moreover, the

7 established Supreme Court authority reviewed must be a pronouncement on constitutional

8 principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules

9 binding only on federal courts.  Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

10    However, where the state courts have not addressed the constitutional issue in

11 dispute in any reasoned opinion, the federal court will independently review the record in

12 adjudication of that issue.  "Independent review of the record is not de novo review of the

13 constitutional issue, but rather, the only method by which we can determine whether a silent state

14 court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir.

15 2003).

16 III.  Procedural/Factual Background

17    The unpublished 2004 Third District Court of Appeal opinion accurately sets forth

18 the procedural history of this case:

19        This is the second appeal by defendant Kenneth Wayne Rich from
        his convictions for committing various sexual offenses against his
20        young daughter. (See People v. Rich (June 19, 2001, C035535)
        [nonpub. opn.]; we take judicial notice (Evid.Code, § 452, subd.
21        (d)) of this court's records in defendant's first appeal.)

22        In December 1999, defendant was charged with 18 sexual offenses.
        He entered negotiated pleas of guilty to nine of them (counts I-VI,
23        VIII, X, XII), the remaining counts were dismissed, and he was
        sentenced to a state prison term of 30 years 4 months. (People v.
24        Rich, supra, C035535.)

25        Defendant appealed, arguing the judgment must be reversed
        because the offenses described in the information were facially
26        barred by the statute of limitations and he had not personally

4

waived the limitation period. (See People v. Williams (1999) 21 Cal.4th 335, 338, 344.) (People v. Rich, supra, C035535.)

This court reversed the judgment and issued the following disposition: "[T]he matter [is] remanded to the superior court for a determination whether facts exist removing each count from the applicable limitation period. If such facts exist, the superior court shall reinstate the convictions and resentence defendant. If any count is not so removed, and defendant does not waive the limitations period, the People, having been deprived of the benefit of the plea [agreement], must be afforded the opportunity to have the [plea] set aside and to proceed on any timely charges, including those previously dismissed." (People v. Rich, supra, C0355350.)

At an evidentiary hearing upon remand, the People sought to prove that five of the nine charges to which defendant had pled guilty (counts II-V and VIII) were timely pursuant to Penal Code section 803, subdivision (g) (hereafter section 803(g); further section references are to the Penal Code unless otherwise specified.) Section 803(g) permits prosecution of specified sexual offenses against children after the statute of limitations has expired if (1) prosecution is commenced within one year of the victim reporting the abuse to law enforcement, (2) the offense involved substantial sexual conduct, and (3) there is independent evidence that clearly and convincingly corroborates the victim's allegation.

At the conclusion of the hearing, the superior court dismissed counts I, VI, X, and XII, but found the following were not time-barred: count II, forcible rape (§ 261, subd. (a)(2)); counts III and IV, lewd acts with a child 14 or 15 years of age with the offender being 10 years older than the victim (§ 288, subd. (c)(1)); count V, forcible penetration by a foreign object (§ 289, subd. (a)(1)); and count VIII, oral copulation (§ 288a, subd. (b)(1)). The court sentenced defendant to state prison term of 20 years 4 months.

Defendant appeals again, contending (1) the superior court was prohibited from proceeding with an evidentiary hearing because the People failed to amend the information to allege that the statute of limitations was extended by section 803(g), (2) the court's findings on the applicability of section 803(g) must be reversed because defendant did not personally waive a jury trial on this issue, (3) the evidence adduced at the evidentiary hearing in support of counts II through V is insufficient to corroborate the victim's testimony, and (4) errors in the abstract of judgment must be corrected and the imposition of certain fines must be stricken. In supplemental letter briefs, defendant contends (1) as originally enacted, section 803(g) was not retroactive and, therefore, could not revive the offenses charged in counts III and IV because they were committed before the statute's effective date, and (2) the court erred in imposing the upper term on counts II, III and V, and a consecutive sentence for counts IV and VIII because in doing so, the court relied upon facts

1    not submitted to a jury and proved beyond a reasonable doubt.
     We conclude that errors in the abstract of judgment must be
2    corrected and that certain fines must be stricken. Otherwise, we
     shall affirm the judgment.
3

4    MSJ, Exhibit (Exh.) K, 2004 Cal. App. Unpub. Lexis 10519; Respondent's Lodged Document 6,

5    pp. 1-4; People v. Rich, 2004 WL 2601678 *1-2 (Cal. App. Nov. 17, 2004).

6            The state appellate court set forth the factual underpinnings of the case as

7    adduced at the evidentiary hearing held in the superior court on resentencing:

8            At the evidentiary hearing, the victim testified that she was born on
     May 9, 1978, and that defendant, who is her father, began
9    molesting her when she was four years old and continued doing so
     until she was 21. They moved to Tehama County from Missouri in
10   July 1992, when she was 14. According to the victim, she orally
     copulated defendant and he orally copulated her when she was 14
11   and 15 years old, and these acts occurred "roughly ... once, maybe
     twice a week," until she was 18 years old. When the court asked
12   the victim if a year ever went by when there was no oral
     copulation, she replied, "Never."
13
             Defendant first had sexual intercourse with the victim in October
14   1993, when she was 15 years old. He got on top of her, held her
     hands, and when she started to scream, he put a pillow over her
15   head. He then "shoved it in" or "jabbed it in [her]." The sheets
     were bloody when he had finished, and he told her to clean up the
16   mess. As a result of the intercourse, the victim became pregnant
     and gave birth to the child in July 1994, when she was 16.
17
             When the victim was 16 or 17, defendant videotaped an act of
18   sexual intercourse and oral copulation with her, and the videotape
     showed defendant holding down her arms and legs. Her mother,
19   who saw the tape and testified that it depicted acts of intercourse
     and oral copulation, destroyed the tape before the hearing.
20
             *7 The victim also testified that defendant "used a dildo on [her]"
21   from "14 [years of age] on up," and that the dildo, which was a
     cream color, was stored in a trash bag and kept in a box in the back
22   of a drawer in a nightstand by her mother's side of the bed. The
     victim's mother verified that she kept an "off-white or pink" dildo,
23   wrapped in a trash bag, in the back of a drawer in a nightstand by
     her side of the bed. Investigating officers confirmed that they found
24   a penis shaped dildo wrapped in a garbage bag in a drawer of a
     nightstand in the bedroom belonging to defendant and the victim's
25   mother. After the officers left, the mother threw the dildo away.

26   \\\\\

                                                6

Prior to defendant's arrest, the victim telephoned him and the call was recorded and monitored by the police.[3] On the tape recording, defendant admitted he began molesting the victim when she was 6 or 7, and admitted fathering her child and "having sex" with her on a frequent basis since she was 14. When the victim accused defendant of using force to have intercourse and described the incident with the pillow, he claimed that he did not remember doing such a thing and that he "would have never done anything to hurt [her]."

During the recorded telephone conversation, the victim asked defendant if he remembered an occasion when they lived in Missouri, and he said, "Hey, if you give me a blow job, I will stop this." Defendant replied, "Yep," and explained that he had tried to stop but "I don't know, I just got weak." He also did not deny he told the victim, "If you let me have intercourse with you, if you let me stick it in you, I'll stop." He did not stop, however, because he thought the victim had changed her mind and "liked it."

MSJ, Exh. K; respondent's Lodged Doc. 6, pp. 14-16; People v. Rich, 2004 WL 2601678 at *6-7.

IV.  Motion for Summary Judgment

Petitioner moves for summary judgment on the ground that petitioner's sentence violates his Sixth Amendment right to have facts increasing his sentence proved to a jury beyond a reasonable doubt, citing Apprendi v. New Jersey, 530 U.S. 466, 488-90 (2000); Blakely v. Washington, 542 U.S. 296, 303-04, 124 S. Ct. 2531 (2004); Cunningham v. California, 549 U.S. 270, 127 S. Ct. 856.  Motion for Summary Judgment (MSJ), pp. 8-9.  In Cunningham, supra, 127 S. Ct. at 860, decided on January 22, 2007, the High Court held that California's determinate sentencing law (DSL) violates a defendant's jury trial right under the Sixth and Fourteenth Amendments "by placing sentence-elevating factfinding within the judge's province."

Petitioner appears to have moved for summary judgment on the sole ground raised in the petition to speed the resolution of this matter in the belief that petitioner is entitled to imminent release.  MSJ, p. 10.

---

[3] See respondent's Lodged Doc, CT, People's Exh. 1, stamped "Received Dec 28 1999."

1    At oral argument on this motion, it was noted that the Ninth Circuit had not yet

2 ruled whether <u>Cunningham</u>'s application is retroactive.  At the hearing, petitioner pressed the

3 point that the claim had been initiated as a <u>Blakely</u> claim.  Very recently, in <u>Butler v. Curry</u>, 2008

4 WL 2331440, No. 07-56204, 6429, 6433 (9th Cir.  June 9, 2008)(slip op.),[4] petitioner's position

5 has been vindicated by the Ninth Circuit's clarification that the <u>Cunningham</u> decision, striking

6 down California's determinate sentencing law (DSL), was compelled by <u>Blakely</u>, such that the

7 decision as to whether petitioner's constitutional rights herein were violated rests, as a threshold

8 matter, on whether or not his conviction became final before <u>Blakely</u>, not <u>Cunningham</u>, was

9 decided.  Citing <u>Teague v. Lane</u>, 489 U.S. 288, 306, 109 S. Ct. 1060, the Ninth Circuit panel

10 states flatly:

11       *Apprendi*, *Blakely*, and *Booker* made "courts throughout the land"
         aware that sentencing schemes that raise the maximum possible
12       term based on facts not found by a jury violate the constitutional
         rights of defendants.  *Id*. at 306.  No principles of comity or
13       federalism would be served by refusing to apply this rule to
         functionally indistinguishable state sentencing schemes on
14       collateral review.  *Cunningham* thus did not announce a new rule
         of constitutional law and may be applied retroactively on collateral
15       review.

16 <u>Butler</u>, <u>supra</u>, at *10.

17       In this case, no party disputes that petitioner's conviction became final on May 24,

18 2005, ninety days after the state supreme court denied his petition for review on direct appeal,

19 filed on February 23, 2005.[5]  <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999) ("holding

20 that the period of 'direct review' in 28 U.S.C. § 2244(d)(1)(A) includes the [ninety-day] period

21 within which a petitioner can file a petition for a writ of certiorari with the United States

22 Supreme Court, whether or not the petitioner actually files such a petition.")  The record

23 indicates that petitioner filed a supplemental letter brief with his appeal before the Third District

24

25       [4] Although the court had taken note of the ruling, petitioner's counsel, on June 11, 2008, in a supplemental filing, sought to assure that the new ruling was herein considered.

26       [5] See respondent's Lodged Document 8.

Court of Appeal, pursuant to a general order of the state appellate court, in light of <u>Blakely</u>, which was decided on June 24, 2004, to which respondent filed a supplemental brief in opposition.  See respondent's Lodged Document Nos. 2 & 4.  Moreover, the portion of the appellate court decision cited above indicates that the court considered petitioner's appeal of his resentencing in light of <u>Apprendi</u> and <u>Blakely</u>.  Thus, there can be no question of the applicability of <u>Apprendi</u>, <u>Blakely</u> and, in light of <u>Butler v. Curry</u>, of <u>Cunningham</u> to the instant case.

Looking at the pre-<u>Cunningham</u> cases which led to the conclusion that the California DSL "squarely violated" the Sixth Amendment, the Ninth Circuit summarizes:

> First in the line of pertinent cases was <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), which held that " 'any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.' " <u>Id</u>. at 476 (quoting <u>Jones v. United States</u>, 526 U.S. 227, 243 n.6 (1999)). Next, <u>Blakely v. Washington</u>, 542 U.S. 296 (2004), clarified that "the 'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant" and reaffirmed <u>Apprendi</u>'s "bright-line rule." Id. at 303 (emphasis in original). Finally, <u>United States v. Booker</u>, 543 U.S. 220 (2005), held that the Federal Sentencing Guidelines were invalid because, as in <u>Blakely</u>, " 'the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact.' " <u>Id</u>. at 235 (quoting <u>Blakely</u>, 542 U.S. at 305). Taken together, <u>Apprendi</u>, <u>Blakely</u>, and <u>Booker</u>, firmly established that a sentencing scheme in which the maximum possible sentence is set based on facts found by a judge is not consistent with the Sixth Amendment.

<u>Butler</u>, <u>supra</u>, at 644.

Petitioner contends there is no dispute as to the material facts in this case.  MSJ, pp. 2-5.  The record indicates that when, on March 14, 2000, petitioner pled guilty to nine counts of an 18-count indictment, he received a warning that the maximum, or "upper term," sentence to which he was subject was 30 years and four months.  MSJ, at 2.

> The Court: Do you understand that the maximum sentence for the offenses to which you are entering a plea of guilty to, which would be Counts I, II, III, IV, V, VI, VIII, X, XII, is 30 years four months

1    in State Prison and a fine of up to $100,000?

2    The Defendant: Yes.

3    MSJ, Exh. C, and respondent's Lodged Reporter's Transcript (RT), Certified Plea, March 14,

4    2004, p. 6.   See also, MSJ, Exh. B, petitioner's signed "Acknowledgment of Rights and

5    Defendant's Waiver for Entry of Guilty Plea," and dated March 14, 2000.  Petitioner asserts

6    accurately, however, as far as it goes, that he was not told whether he would receiver a lower,

7    middle or upper term sentence.  MSJ at 2-3, Exh. C, RT 3-11.  He also states as an undisputed

8    fact (# 2) that the parties did not stipulate to aggravating factors; nor was there a narration of the

9    relevant facts.  MSJ, Statement of Undisputed Facts (SUF), Exh. B; respondent's Lodged Doc,

10   RT, Certified Plea.  Petitioner concedes that the parties did stipulate to a factual basis for the

11   counts to which petitioner pled guilty, averring that there was no stipulation to the existence of

12   aggravating factors.  MSJ, at 3.

13   The Court: Is there a factual basis to the plea?

14   [Defendant's Counsel]: Your Honor, there is.  We would stipulate
     that there is a factual basis for some counts.  Additionally, this
15   would be a People vs. West plea as to other counts.  My client does
     not wish to contest those counts.
16
     The Court: And is that acceptable to the People?
17
     [The Prosecutor]: We will stipulate to a factual basis on all counts,
18   Your Honor.

19   MSJ, Exh. C, RT 8.

20   Following the April 17, 2000, sentencing to a term of 30 years and four

21   months (MSJ, SUF # 3, Exh. D, CT; Abstract of Judgment; respondent's Lodged Doc., RT for

22   4/17/00), on appeal, according to petitioner, the state appellate court simply vacated the

23   conviction and sentence because each of the counts to which petitioner had pled were found to be

24   beyond the applicable statute of limitations.  MSJ, p. 3, Exh. F, June[6] 19, 2001, first Third

25   _____

26   [6] Petitioner erroneously references the decision as dated July 19, 2001.

10

1   District Court of Appeal decision.   However, the court actually stated that the judgment was

2   reversed and the matter remanded for a hearing for the lower court to determine "whether facts

3   exist removing each count from the applicable period."  MSJ, Exh. F, p. 6.

4                  If such facts exist, the superior court shall reinstate the convictions
    and resentence defendant.  If any count is not so removed, and

5   defendant does not waive the limitation period, the People, having
    been deprived of the benefit of the plea bargain, must be afforded

6   the opportunity to have the bargain set aside and to proceed on any
    timely charges, including those previously dismissed.

7

8   Id.

9                  On remand, following an evidentiary hearing, at which, inter alia, the victim,

10  petitioner's daughter and his wife testified, five of the counts were reinstated and petitioner was

11  resentenced on October 17, 2001:

12                 Count 2 (Forcible rape on or about October 1993, California Penal
    Code Section 261(a)(2)): court sentenced Mr. Rich to the upper

13  term of eight years.

14                 Count 3 (Lewd and lascivious act upon a 14-year-old victim on or
    about July, 1992, through May 8, 1993, California Penal Code

15  Section 288(c)(1)): court designated this as the principal term
    per California Penal Code Section 1170.1 and imposed the upper

16  term, three years.

17                 Count 4 (Lewd and lascivious act upon a 15-year-old victim on or
    about May 9, 1993, through May 8, 1994, California Penal Code

18  Section 288(c)(1)): court sentenced Mr. Rich to the middle term,
    three years, to be served consecutively at one-third the

19  mid-term, eight months.

20                 Count 5 (Forcible genital and anal penetration by use of a foreign
    object for sexual gratification on or about July, 1992, through

21  May 8, 1993, California Penal Code Section 289(a)(1)): court
    imposed the upper term of eight years, to be served consecutively.

22

23                 Count 8 (Oral copulation on or about May 9, 1994, through May 8,
    1995, with a 16-year-old victim, California Penal Code Section

24  288(b)(1)): court sentenced Mr. Rich to the middle term of three
    years, to be served consecutively at one-third the mid-term, eight
    months.

25

26  MSJ, pp. 3-4, Exh. F, at 3-4, Exh. H, Exh. I, 10/17/01, CT, Criminal Minutes/Abstract of

1  Judgment, Exh. J, RT for 10/17/01 resentencing; respondent's Lodged Doc. RT for hearing on

2  10/15/01 and resentencing on 10/17/01.  Petitioner avers that he was not granted the opportunity

3  to determine "anew whether or not he wanted to plead guilty."  MSJ, p. 3, SUF # 6.

4        Petitioner is correct that petitioner received a new sentence of 20 years and four

5  months, which included a sentence of two consecutive eight-year upper terms, pursuant to Cal.

6  Penal Code § 667.6(d) and that he received those terms based on the court's finding that "factors

7  in aggravation outweigh those in mitigation."  MSJ, SUF #s 6-7, citing Exhs. I & J, CT and RT

8  & respondent's Lodged Docs. CT 10-13, RT 66-72.

9              The Court finds the following factors in aggravation outweigh
              those in mitigation.  These factors apply to all counts.  The victim
10             was particularly vulnerable.  The commission of the crimes
              indicate planning in that they are committed only at times which
11             would prevent detection, and because of the multiplicity of crimes
              they would have to involve planning.  The crimes involved a high
12             degree of viciousness, cruelty and callousness in that the victim
              was the Defendant's own minor daughter, who resided in the
13             home.

14  MSJ, Exh. J & respondent's Lodged Doc., RT, p. 69.  There is no dispute that, as noted earlier,

15  Third District Court of Appeal affirmed the conviction and the California Supreme Court denied

16  the petition for review.  MSJ, SUF # 8, Exhs. K & L; respondent's answer & Lodged Docs. 6 &

17  8.

18             In his supplemental letter brief on appeal, petitioner made the claim that:

19             The imposition of aggravated terms based on circumstances in
              aggravation as determined by the court violated appellant's Sixth
20             Amendment rights, as defined by the Apprendi/Blakely doctrine.

21  MSJ, p. 4, respondent's Lodged Doc. # 2, p. 2.

22             In rejecting that claim, the state appellate court reasoned:

23             Applying the Sixth Amendment to the United States Constitution,
              the United States Supreme Court held in Apprendi v. New Jersey
24             (2000) 530 U.S. 466 [147 L.Ed.2d 435] (hereafter Apprendi) that
              other than the fact of a prior conviction, any fact that increases the
25             penalty for a crime beyond the statutory maximum must be tried to
              a jury and proved beyond a reasonable doubt. ( Id. at p. 490 [147
26             L.Ed.2d at p. 455].)  For this purpose, the statutory maximum is the

maximum sentence that a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant. Thus, when a sentencing court's authority to impose an enhanced sentence depends upon additional fact findings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts.

(Blakely v. Washington (2004) 542 U.S. 296, ---- [159 L.Ed.2d 403, 413-414] (hereafter Blakely).)

Relying on Apprendi and Blakely, defendant claims the superior court erred in imposing the upper term on counts II, III and V, and a consecutive sentence on counts IV and VIII. The contention fails. Plea bargaining is a judicially and legislatively recognized procedure (People v. Masloski (2001) 25 Cal.4th 1212, 1216; Pen.Code, § 1192.5) that provides reciprocal benefits to the People and the defendant. (People v. Orin (1975) 13 Cal.3d 937, 942.) When, as part of a plea agreement, a defendant specifies the maximum sentence that may be imposed, he necessarily admits that his conduct is sufficient to expose him to that punishment and reserves only the exercise of the trial court's sentencing discretion in determining whether to impose that sentence. (See People v. Hoffard, supra, 10 Cal.4th at pp. 1181-1182.) The decisions in Apprendi and Blakely do not preclude the exercise of discretion by a sentencing court so long as the sentence imposed is within the range to which the defendant was exposed by his admissions. Such is the case here. Defendant's plea in effect admitted the existence of facts necessary to impose the upper terms and consecutive sentences.

MSJ, Exh. K; respondent's Lodged Doc. 6, pp. 22-23; People v. Rich, 2004 WL 2601678 *10.

The decision of the Third District Court of Appeal is the last reasoned decision in this case as to, inter alia, the instant claim and thus it is the one to be looked to under § 2254(d)(1) "as the basis for the state court's judgment." Polk v. Sandoval, 503 F.3d 903, 909 (9th Cir. 2007).

As petitioner points out, the sentencing judge used a preponderance of the evidence test to make certain findings to impose upper, rather than middle term, sentences. MSJ, p. 9. The Supreme Court, in noting that California's DSL "direct[s] the sentencing court to start with the middle term, and to move from that term only when the court itself finds and places on the record facts-whether related to the offense or the offender-beyond the elements of the charged offense," has found that:

1
2
3
4

> [O]ur decisions from Apprendi to Booker point to the middle term
> specified in California's statutes, not the upper term, as the
> relevant statutory maximum.  Because the DSL authorizes the
> judge, not the jury, to find the facts permitting an upper term
> sentence, the system cannot withstand measurement against our
> Sixth Amendment precedent.

5    Cunningham v. California, 549 U.S. 270, 127 S. Ct. at 862, 870.

6    Much of the oral argument in this matter has been rendered moot by the holding

7    of Butler v. Curry.   Respondent argued that when at the outset petitioner pled guilty and agreed

8    that there was a thirty-year maximum term, that he expected the court to make judicial findings

9    and raised no objection to a jury not being impaneled at sentencing.   Conceding that the state

10   appellate court had found no express waiver, respondent noted that that court had found

11   petitioner agreed that he was vulnerable to the maximum term as result of his plea, and that pre-

12   Apprendi, the expectation was that the court would make judicial findings.   Petitioner maintained

13   that there was no knowing waiver on sentencing factors or aggravating factors as to his right to a

14   jury trial, only a stipulation to enough facts for the counts of conviction and that state law facts

15   cannot do double duty as aggravating factors.   Conceding that theoretically petitioner could have

16   pled guilty to sentencing factors, such was not the case here.

17   Given the record of the sentencing and resentencing in this case, and in light of

18   Cunningham, there can be little doubt that the state appellate court's decision that petitioner's

19   "plea in effect admitted the existence of facts necessary to impose the upper terms and

20   consecutive sentences," where the imposition of the upper terms rested on the lower court judge

21   having found aggravating factors by a preponderance of the evidence, rather than by a jury

22   finding guilt beyond a reasonable doubt as to those factors, was "contrary" to clearly established

23   Supreme Court precedent insofar as the judge, under the DSL, imposed a sentence beyond the

24   statutory maximum recognized by Supreme Court precedent "from Apprendi to Booker."

25   Cunningham v. California, 549 U.S. 270, 127 S. Ct. at 862, 870; Butler v. Curry, 528 F3d 624

26   (9th Cir. 2008).  Although "under California law, only one aggravating factor is necessary to set

14

1   the upper term as the maximum sentence," any such factor must be "established in a manner

2   consistent with the Sixth Amendment," Butler, supra, 642.  Respondent argued that the judge

3   cited as an aggravating factor that the victim was petitioner's daughter, an indisputable fact, but

4   petitioner asserted that as to that factor, the judge found cruelty and callousness and that is the

5   portion of the aggravating factor finding that violated the Sixth Amendment.  Of course, finding

6   that imposition of the upper term sentence violated petitioner's Sixth Amendment rights does not

7   end the matter.

8          In Butler, supra, 648, citing Washington v. Recuenco, 548 U.S. 212, 126 S.Ct.

9   2546 (2006), the Ninth Circuit panel observed that a sentencing error entitles a petitioner to relief

10   only if the error is not harmless.  The Butler Court, id., then goes on to apply the standard set

11   forth in Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710, (1993), whether "the error had a

12   substantial and injurious effect on [petititioner's] sentence."

13          Under that standard, we must grant relief if we are in "grave doubt"
            as to whether a jury would have found the relevant aggravating
14          factors beyond a reasonable doubt.  O'Neal v. McAninch, 513 U.S.
            432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). Grave doubt
15          exists when, "in the judge's mind, the matter is so evenly balanced
            that he feels himself in virtual equipoise as to the harmlessness of
16          the error." Id. at 435.

17   Butler, supra, at 648.

18          In conducting a harmless error review of an Apprendi violation, the Ninth Circuit

19   made clear that evidence considered at sentencing proceedings could be considered, while "new

20   admissions made at the sentencing..." are not.  Butler, supra, at 648.

21          Apprendi errors are harmless when we can ascertain that a judge
            was presented with sufficient documents at sentencing-including
22          the original conviction documents and any documents evidencing
            modification, termination, or revocation of probation-to enable a
23          reviewing or sentencing court to conclude that a jury would have
            found the relevant fact beyond a reasonable doubt.  See
24          Salazar-Lopez, 506 F.3d at 755.

25   Butler, supra, at 647n. 14.

26   \\\\\

In this case, the court need go no further than the first aggravating factor noted by the judge at resentencing, that "the victim was particularly vulnerable."   MSJ, Exh. J & respondent's Lodged Doc., RT, p. 69.  At a minimum, it is indisputable that the victim was petitioner's own daughter, and the record before the judge at resentencing contained the information that petitioner regularly molested her from a very young age, at one point impregnating her with a child who, as a tragic product of incest, unsurprisingly suffered a number of developmental deficits.  See, e.g., comments made by petitioner's own counsel at the time of the original sentencing, on April 17, 2000, include the following:

> Your Honor, my client is the first person to acknowledge that his criminal conduct in this case has destroyed many lives: his daughter, his wife; frankly, his entire family has been essentially destroyed by his criminal activity.
> ..................................................................................
> This is a case where my client chose not to force his daughter, who had already been traumatized in an incredible fashion, to be further traumatized by a public trial where she would have to recount the details of this relationship...
>
> ..................................................................................
> Certainly over the course of years this was very reprehensible conduct.

Respondent's Lodged Doc., RT, p. 17.

The prosecutor contended as follows, at the original sentencing, in arguing for a maximum sentence:

> Your Honor, I would ask you to try to imagine living with a predator.  He is there in the house with you all the time.  He is there at the table with you when you eat dinner.  He is there when you are at your most vulnerable, when you are in the bathroom, when you shower, when you sleep.  He provides your food, clothing, your shelter.  He is your dad, and you love him no matter what he does.  He is an adult.  You are a very young girl.  He is bigger and much stronger than you.  Your dad has the power.  He has the power over you.  He controls everything that you do and every place that you go.
> ..................................................................................
> Kenneth Rich impregnated his daughter with his own child when she was 15.  She gave birth at 16.  As you might imagine, that child is not normal.  And how is her mother going to answer the

1    questions about who her dad is?  How is she going to live with
     that?
2

3    Respondent's Lodged Doc., RT, pp. 17-18.

4           The court noted, in imposing the original sentence:

5           Clearly the Defendant perpetrated acts of sexual abuse upon his
            own daughter for years...  The fact of the matter is that the
6           Defendant committed offenses directed towards an innocent victim
            repeatedly for years...
7

8    Respondent's Lodged Doc., RT, pp. 20-21.

9           Under California law, "[t]he 'particularly vulnerable victim' factor supports

10   imposition of the upper term if the victim is vulnerable 'in a special or unusual degree, to an

11   extent greater than in other cases [and is] defenseless, unguarded, unprotected, accessible,

12   assailable ... susceptible to the defendant's criminal act.'"  People v. Clark, 50 Cal.3d, 583, 638,

13   268 Cal. Rptr. 399 (Cal. 1990), quoting People v. Smith, 94 Cal.App.3d 433, 436, 156 Cal. Rptr.

14   502 (Cal. App. 4th 1979).  Specifically, the California Supreme Court has found the status of a

15   crime victim, where for example, she was dependent on the perpetrator for shelter with "no other

16   apparent place to go," can be found to render a person "particularly vulnerable." People v.

17   Stitely, 35 Cal.4th 514, 575, 26 Cal.Rptr.3rd 1, (Cal. 2005) ("a crime victim can be deemed

18   vulnerable in this context for reasons not based solely on age, including the victim's relationship

19   with the defendant and his abuse of a position of trust." )  It is difficult to conceive of a more

20   egregious abuse of trust than that committed by a father in sexually victimizing his natural child,

21   here, a daughter, living in his house, dependent on him for her survival and well-being both

22   physically and emotionally.

23          Far from being left in "grave doubt" that, under the circumstances of this case

24   a jury would have found, beyond a reasonable doubt, the aggravating circumstance that this

25   victim was particularly vulnerable, the court is left in virtually no doubt at all.

26   \\\\\

17

1    "After one aggravating factor was validly found, the trial court legally *could* have

2    imposed the upper term sentence."  <u>Butler</u>, <u>supra</u>.  Therefore, the undersigned finds that the

3    <u>Apprendi/Blakely</u> error was harmless and will recommend denial of the dispositive motion and

4    the habeas petition.

5         Accordingly, IT IS ORDERED that:

6         1.  The Clerk of the Court is to substitute Matthew Martel in place of Roseanne

7    Campbell as respondent warden in this action; and

8         2.  The show cause order, filed on December 18, 2007 (# 30), is discharged.

9         IT IS RECOMMENDED that both petitioner's motion for summary judgment,

10   filed on November 19, 2007 (# 28), which came on for hearing on December 20, 2007, and the

11   habeas petition be denied.

12        These findings and recommendations are submitted to the United States District

13   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

14   days after being served with these findings and recommendations, any party may file written

15   objections with the court and serve a copy on all parties.  Such a document should be captioned

16   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

17   shall be served and filed within ten days after service of the objections.  The parties are advised

18   that failure to file objections within the specified time may waive the right to appeal the District

19   Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

20   DATED: 07/17/08

21                                    /s/ Gregory G. Hollows
                                    _____
22   GGH:009                        UNITED STATES MAGISTRATE JUDGE
     rich0892.msj+

23

24

25

26